Argued and submitted February 11, affirmed November 4, 2015

In the Matter of the Compensation of
Guy E. Bales, Claimant.
SAIF CORPORATION
and Coffman Excavation-Intel OCIP,
*Petitioners,*

*v.*

Guy E. BALES,
*Respondent.*

Workers' Compensation Board
1106366; A154979

360 P3d 1281

Julie Masters argued the cause and filed the briefs for petitioners.

Julene M. Quinn argued the cause and filed the brief for respondent.

Before Duncan, Presiding Judge, and Lagesen, Judge, and Flynn, Judge.

FLYNN, J.

## FLYNN, J.

Employer Coffman Excavation-Intel OCIP and its workers' compensation insurance carrier, SAIF Corporation, seek review of an order of the Workers' Compensation Board affirming the administrative law judge's (ALJ) order awarding claimant attorney fees under ORS 656.386(1)(a). That statute requires the insurer to pay the claimant's attorney fees in various circumstances, including, as pertinent here, when the insurer denies a claim for compensation and the claimant's attorney is instrumental in obtaining rescission of the denial. We conclude that SAIF's decision to pay for medical services it previously denied constituted a rescission of a denied claim for purposes of ORS 656.386(1), even though SAIF never withdrew the theory on which it based its original denial. SAIF does not dispute the finding that claimant's attorney was instrumental in obtaining that rescission. Accordingly, we affirm.

## I.  BACKGROUND

We summarize the board's pertinent factual findings, which SAIF does not challenge. Claimant suffered a compensable left knee injury in 2007, which SAIF accepted as a disabling medial meniscus tear. Claimant's physician, Dr. Hanley, performed the surgery, and SAIF closed the claim. But claimant, who continued to experience symptoms, challenged the closure, and SAIF withdrew the notice of closure pursuant to an order on reconsideration.

In 2010, Hanley opined that claimant's meniscus tear had caused a worsening of arthritis in claimant's left knee. He performed a second surgery and also administered three injections to claimant's left knee. SAIF again closed the claim and again rescinded its closure when ordered to do so, this time because claimant had become enrolled and was actively engaged in an authorized training program. *See* ORS 656.268(10) (describing claim processing procedures when worker becomes enrolled in an authorized training program).

A few months later, Hanley requested authorization to provide an additional series of injections to claimant's left knee. Oregon Health Systems (OHS), the managed

health care provider overseeing claimant's treatment, *see* ORS 656.260 (describing managed health care providers), declined to authorize the request. It explained that the requested injections were "not directed towards the accepted condition of: LEFT KNEE MEDIAL MENISCUS TEAR." Claimant requested administrative review by the Medical Review Unit of the Workers' Compensation Division of the Department of Consumer and Business Services, ORS 656.245(6).[1] SAIF responded with a letter to the Medical Reviewer in which it explained that it denied the payment for the injections because "the requested injections are not directed to the accepted medial meniscus tear. Rather, * * * they are related to degenerative medial compartment changes of an arthritic nature that have not yet been claimed or accepted as a new or omitted medical condition." The Medical Review Unit referred the matter to the Hearings Division of the board, pursuant to ORS 656.704(3)(b)(C) and (5),[2] because it determined that the dispute involved a question of medical causation.

Several months later, Hanley responded to an inquiry from SAIF by expressing his opinion that the injections were intended to treat arthritis in claimant's left knee and that claimant's meniscal injury accelerated the arthritis. Claimant then sent SAIF a written request to add the arthritis as an accepted condition. SAIF issued a modified notice of acceptance that included the arthritic condition and then paid for the injections.

---

[1] ORS 656.245(6) provides:

"Subject to the provisions of ORS 656.704, if a claim for medical services is disapproved, the injured worker, insurer or self-insured employer may request administrative review by the director pursuant to ORS 656.260 or 656.327."

[2] Some medical services disputes (such as those related to the appropriateness of a particular treatment) are resolved by the director pursuant to ORS 656.704(3)(b)(B). But, when the medical services dispute involves a "matter concerning a claim," ORS 656.704(3)(a) assigns jurisdiction to the board to resolve the dispute. Under ORS 656.704(3)(b)(A) and (C), a "matter concerning a claim" includes medical services disputes in which the issue is the compensability of the treatment or the causal relationship of the treatment to an accepted claim. This case falls within the latter category, as SAIF denied the treatment based on its view that the treatment was not related to claimant's accepted claim. Although this case originated with the director, the director transferred the matter to the Hearings Division of the board, as provided in ORS 656.704(5).

Because SAIF had accepted claimant's arthritic condition and had paid for the requested injections by the time the dispute came up for hearing before the Hearings Division of the board, SAIF argued to the ALJ that the issues presented for hearing were moot. The ALJ apparently rejected SAIF's mootness argument and found that the proposed injections were causally related to the accepted claim because claimant's arthritis had become an accepted condition on an accepted claim. The ALJ further concluded that claimant was entitled to insurer-paid attorney fees under ORS 656.386(1) and costs under ORS 656.386(2).[3]

On appeal to the board, SAIF no longer argued that the compensation dispute was moot, but asserted that claimant had not prevailed over or obtained a rescission of SAIF's original denial, as required for an award of fees under ORS 656.386(1)(a). SAIF argued that "the denial of a relationship between claimant's medial meniscus tear and the synvisc injections was correct and has never been rescinded." The board rejected SAIF's argument.

## II.  ANALYSIS

The question presented to the board, and to us on judicial review, is whether ORS 656.386(1) authorizes the award of attorney fees to claimant. That statute provides, as pertinent to the present dispute, that, "[i]n all cases involving denied claims * * * where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the [ALJ], a reasonable attorney fee shall be allowed."[4] Because

---

[3] The board awarded fees under ORS 656.386, because this medical services dispute is a "matter concerning a claim," for which jurisdiction is assigned to the board. ORS 656.704(3)(a), (b)(A), and (b)(C). For medical services disputes resolved by the director pursuant to ORS 656.704(3)(b)(B), the requirements for an award of attorney fees to a prevailing claimant are set forth in ORS 656.385. The parties disagree about whether ORS 656.385 would provide an alternative basis for an award of fees in this case. Given our decision to affirm the award under ORS 656.386, we do not reach the arguments regarding ORS 656.385.

[4] ORS 656.386(1)(a) provides:

"In all cases involving denied claims where a claimant finally prevails against the denial in an appeal to the Court of Appeals or petition for review to the Supreme Court, the court shall allow a reasonable attorney fee to the claimant's attorney. In such cases involving denied claims where the claimant prevails finally in a hearing before an Administrative Law Judge or in a review by the Workers' Compensation Board, then the Administrative Law

there is no dispute that SAIF agreed to pay for the disputed injections prior to a decision by the ALJ, or that claimant's attorney was instrumental in bringing about that change, claimant's right to recover a reasonable attorney fee for the medical services dispute in this case turns on two elements: (1) whether the case involved a denied claim and (2) whether SAIF's decision to pay for the disputed medical services amounted to a "rescission of the denial." As it involves a matter of statutory construction, we review the question of claimant's entitlement to attorney fees under ORS 656.386(1) for legal error. ORS 183.482(8); *SAIF v. Wart*, 192 Or App 505, 507, 87 P3d 1138, *rev den*, 337 Or 248 (2004).

## A.  Denied Claim

On judicial review, SAIF argues that its refusal to pay for the injections did not result in a "denied claim" for purposes of ORS 656.386(1).[5] We disagree. For purposes of an award of fees under ORS 656.386(1)(b)(A), a "denied claim" is

"[a] claim for compensation which an insurer or self-insured employer refuses to pay on the express ground that the injury or condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation[.]"

The first element of that definition is met because a claim for medical services is a "claim for compensation." ORS 656.005(8) ("'Compensation' includes all benefits, including medical services, provided for a compensable injury to a

_____

Judge or board shall allow a reasonable attorney fee. In such cases involving denied claims where an attorney is instrumental in obtaining a rescission of the denial prior to a decision by the Administrative Law Judge, a reasonable attorney fee shall be allowed."

[5] Claimant contends that SAIF did not preserve this argument, pointing to the board's statement that "the parties do not dispute that SAIF's medical services denial constitutes a 'denied claim.'" Although we agree that SAIF did not expressly argue below that the fee award should be reversed because of the "denied claim" requirement of ORS 656.386(1), it also never conceded that its medical services denial constitutes a "denied claim" for purposes of a fee award under that statute. We address the "denied claim" argument because it is part of the broader legal issue SAIF raised below—whether ORS 656.386(1) authorizes an award of fees in this case—and because determining whether the denial constitutes a "denied claim" under ORS 656.386(1) is part of our responsibility to correctly interpret the statutory requirement that claimant obtain a "rescission" of a "denied claim." *See Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997).

subject worker or the worker's beneficiaries by an insurer or self-insured employer pursuant to this chapter.").

We also conclude that the second element is met— that SAIF refused to pay for the requested medical services on the "express ground" that the "condition for which compensation is claimed is not compensable or otherwise does not give rise to an entitlement to any compensation." SAIF expressly denied the claimed compensation—payment for injections—on the ground that the injections were treatment for an arthritic condition that had "not yet been claimed or accepted as a new or omitted medical condition." That amounts to a denial on the express grounds that claimant sought compensation for a condition that did "not give rise to an entitlement to any compensation," within the meaning of ORS 656.386(1)(b)(A), even if SAIF did not expressly deny the arthritic condition. *See Wart*, 192 Or App at 512 (claim denial that recited it was based only on noncooperation and was "not a denial on the merits" amounted to a denial on the ground that the injury or condition "otherwise does not give rise to an entitlement to any compensation"); *cf. Safeway Stores, Inc. v. Cornell*, 148 Or App 107, 112, 939 P2d 99 (1997) (denial that disputed only the amount that claimant should receive for the expense of traveling to treatment for his injury was not a "denied claim" within the definition of ORS 656.386(1)(b)(A)). Thus, the case referred to the ALJ for hearing was a case involving a "denied claim" within the meaning of ORS 656.386(1)(b)(A).

B. *Rescission*

SAIF argues that, even if its refusal to pay for the injections constituted a "denied claim," its subsequent decision to pay for the medical service could not be a "rescission" of the claim denial unless SAIF also conceded the theory for the denial—that it did not need to pay for medical services related to a nonaccepted condition. We disagree, because SAIF's decision to pay for the same requested compensation that it previously denied constitutes a "rescission," regardless of why SAIF made that decision.

As we have explained, a "rescission" for purposes of ORS 656.386(1) "is simply the act of doing away with, taking away, or removing." *SAIF v. Batey*, 153 Or App 634,

641, 957 P2d 195, *adh'd to on recons*, 155 Or App 21, 963 P2d 732 (1998), *rev den*, 328 Or 330 (1999). SAIF concedes that the board correctly determined there was "one, and only one, disputed medical service claim" in this case. Indeed, both the record and the board's findings make clear that the injections for which SAIF ultimately agreed to pay are the same injections that were the object of Hanley's initial request for payment. That claim for medical services is the claim for compensation that SAIF initially denied and then later paid. As SAIF's explanation for denying those services made clear, there was no claim for a new or omitted condition and no denial of any claim beyond the claimed medical services. Thus, when SAIF agreed to pay for the previously requested and denied services, it rescinded its denial of that compensation claim.

Nevertheless, SAIF insists that its agreement to pay for the claimed medical services is not a "rescission" because it followed a change in circumstances—claimant's request to accept arthritis as an additional condition—and because SAIF never conceded error in the theory for its denial—that the injections were compensable only if addressed to an accepted condition. A "rescission" for purposes of ORS 656.386(1) does not require the insurer to concede its theory for the denial or change its mind without any action on the claimant's part, as the larger context of ORS 656.386(1) makes clear. The statute provides for an award of fees in "all cases involving denied claims" if the claimant prevails in a decision by an ALJ; prevails in a review by the board; prevails "in an appeal to the Court of Appeals or petition for review to the Supreme Court[;]" or obtains a "rescission" in the predecision stage. The "rescission" portion of ORS 656.386(1), at issue here, was added to the statute following this court's decision in *Jones v. OSCI*, 107 Or App 78, 810 P2d 1318 (*Jones I*), *withdrawn on recons*, 108 Or App 230, 814 P2d 558 (1991) (*Jones II*), in which we held that the then-existing version of ORS 656.386(1) provided no basis for an award of fees if the claimant prevailed prior to a decision at the hearing level. *Jones II,* 108 Or App at 232 (explaining procedural chronology of amendment and reason for withdrawal of original decision). It addressed a gap in the otherwise comprehensive grant of attorney fees

to claimants who prevail in "cases involving denied claims" and must be understood in that broader context.

At the other stages for which ORS 656.386(1) authorizes fees, the question is simply *whether* the claimant prevailed over a refusal to pay requested compensation, not *why* the claimant prevailed. *Stephenson v. Meyer*, 150 Or App 300, 304, 945 P2d 1114 (1997). We explained in *Stephenson* that the board awards fees under ORS 656.386(1) "in cases where (1) there is a request for compensation; (2) the request for compensation is denied; and (3) the claimant prevails finally against the refusal to pay compensation as requested." *Id.* Neither the language of ORS 656.386(1) nor our case law suggests any reason to define "rescission" of a denied claim for compensation as meaning more than obtaining the insurer's agreement to pay the requested but previously denied compensation.

In *Batey*, we disagreed with SAIF's proposition that the board could not award fees under ORS 656.386(1) when SAIF withdrew a denial of a claimant's aggravation claim but did not withdraw the theory behind its denial— that the claimant suffered no compensable aggravation. 153 Or App at 636. The claimant in *Batey* initially requested that SAIF pay temporary disability compensation, a change that required reclassification of her compensable injury from "nondisabling" to "disabling." *Id.* SAIF responded by instructing the claimant to file an aggravation claim, but then denied that aggravation claim. *Id.* While the claimant's request for hearing was pending, SAIF agreed to pay the requested compensation by reclassifying the claim as disabling, and withdrew the aggravation denial as a "procedural nullity," but it did not concede that the claimant had suffered an aggravation. *Id.* SAIF sought review after the board ordered SAIF to pay a penalty plus attorney fees under two different statutory provisions, including an award under ORS 656.386(1), for the claimant's success in obtaining rescission of the aggravation denial. *Id.* at 637. Citing the dictionary definition of "rescind," we emphasized that "a rescission does not require replacing that which has been rescinded with something else." *Id.* Thus, we held that SAIF rescinded the denial for purposes of ORS 656.386(1),

regardless of the fact it did not issue an aggravation acceptance, *i.e.*, regardless of the fact it did not concede the theory for its denial but withdrew it for a different reason.

For purposes of a "rescission" under ORS 656.386(1), what matters is that SAIF denied the request for the compensation and then agreed to pay for the requested compensation. Here, the "compensation as requested" was payment for injections; nothing more. An insurer's obligation to pay for medical services under ORS 656.245 arises when the treatment relates to the "compensable injury," a concept that is not limited to the "accepted conditions." *SAIF v. Carlos-Macias*, 262 Or App 629, 637, 325 P3d 827 (2014). Thus, SAIF's theory that the arthritis had to be an accepted condition before claimant could receive the compensation he requested is not the only theory under which claimant could prove the services were compensable. As in *Batey*, it makes no difference that SAIF did not concede the theory on which it denied the claim or that SAIF paid the requested compensation only after claimant followed the procedure SAIF requested; what matters under ORS 656.386(1) is whether claimant prevailed, not why he prevailed.

Although SAIF suggests that the board's approach allows the medical dispute process to become "a proxy" for the requirement of a formal request before an insurer must consider accepting new or omitted conditions, ORS 656.267(1), that system continues to have significance. An insurer's acceptance of a new or omitted condition triggers additional obligations such as the obligation to pay compensation for permanent disability related to the condition. ORS 656.268(1)(b), (15). By contrast, the insurer's obligation under ORS 656.245 to pay for medical services "necessitated in material part by the 'compensable injury,'" is not limited to services addressing "accepted conditions." *SAIF v. Martinez*, 219 Or App 182, 191, 182 P2d 873 (2008). Indeed, ORS 656.267(1) expressly contemplates that claims for, and payment of, medical services will occur without formal acceptance of a new or omitted condition: neither a claimant's "requests for authorization to provide medical services" for a new or omitted condition nor the insurer's act of "actually providing such medical services" will constitute a claim that the insurer accept the new or omitted condition.

Thus, in *Martinez*, we rejected SAIF's concern—a concern very similar to the concern expressed by SAIF here—that requiring insurers to pay for medical services related to a condition that is not accepted "effects an 'end run' around the requirements" of ORS 656.267(1). *Id.* at 189.

Claimant has never contended—and could not contend—that the request for injections was a claim that SAIF add arthritis as an accepted condition. ORS 656.267(1). It was, however, a "claim for compensation," and SAIF's denial of that claim was a "denied claim" within the meaning of ORS 656.386(1). SAIF's subsequent decision to pay for the same services, regardless of its rationale for that decision, amounted to a "rescission" of the denied claim for purposes of ORS 656.386(1).

C.  *Additional Fee Requirements*

Finally, we disagree with SAIF's concern that our interpretation of "rescission" can make an insurer liable for fees simply "for timely providing for services as they become compensable." ORS 656.386(1) requires more than just a voluntary payment of compensation that the insurer has previously denied. Rather, it also requires a finding that claimant's attorney was "instrumental" in bringing about the insurer's decision to pay the compensation and that the fee amount is "reasonable" given that "instrumental" effort. In this case, the board found that claimant's attorney was instrumental in getting SAIF to pay for the previously denied medical services and that $3,000 is a "reasonable" fee for the attorney's efforts. Given those findings, which SAIF does not challenge on review, the board correctly determined that SAIF is liable for that fee under ORS 656.386(1)(a).

Affirmed.